601 A.2d 846

COMMONWEALTH of Pennsylvania

v.

Charles J. TURIANO, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 15, 1991.

Filed Jan. 13, 1992.

392

Jeffrey W. Stover, State College, for appellant.

Stewart L. Kurtz, Dist. Atty., Huntingdon, for Com., appellee.

Before CAVANAUGH, CIRILLO and BROSKY, JJ.

CAVANAUGH, Judge:

Appellant asserts that the trial court erred by denying his request to withdraw his guilty plea because of (1) ineffectiveness of counsel in preparing an insanity defense and (2) alleged interference with his legal mail by prison guards. We are constrained to agree with the tenor of his first argument based on the liberal standard for the withdrawal of guilty pleas before sentencing first articulated in *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (1973). We

do so with reluctance, however, because we feel the standard adopted in *Forbes* no longer comports with guilty plea practice in this Commonwealth.

A full recitation of the facts and the procedural history of the case *sub judice* sets our concerns in a more proper focus. On June 18, 1990, at approximately 9:00 p.m., the appellant shot and killed two persons, Lewis Taylor and Timothy Steele. Appellant's motivation in committing the crimes is not clear.[1] The shooting occurred in the Taylor household, and Lewis Taylor's father and the appellant's niece were present in the house at the time of the murders. They were able to positively identify appellant as the perpetrator. The appellant was arrested the next morning.

Robert Stewart, the County Public Defender, was appointed to handle this case the day after the murders. Appellant soon became dissatisfied with Attorney Stewart's representation. On July 11, 1990, he wrote a letter to the trial court requesting another attorney. The letter was received by the court on July 14th, and the court had the defendant appear before him on July 19th and interrogated the defendant concerning his request. The defendant felt that it was his attorney's responsibility to request the trial court to order a mental health examination as soon as possible. Attorney Stewart had mentioned attaining such an exam for him when he was appointed on June 19th. Appellant told the court that he didn't trust Attorney Stewart because he had made no effort to attain the promised exam, and had done nothing on his case. Attorney Stewart and the trial court informed the appellant that it was unprecedented in the County for a mental health exam to be scheduled in the first month or two after arrest. The appellant requested the trial judge to provide him with another attorney. The trial judge refused, asserting that

1. The record indicates that appellant had fought with his brother earlier that evening and he left his house with a gun asserting that he was going to shoot his brother. It is unknown why appellant shot the victims. The record suggests appellant was romantically fixated with his niece, whom Lewis Taylor was dating.

Attorney Stewart was the best and most experienced person doing criminal defense in the County.

On August 23, 1990, Attorney Stewart on behalf of appellant drafted a request for a psychological examination. On August 24, 1990, Attorney Stewart received an order from the trial court providing the appellant with the psychological examination. Appellant was taken on September 14th from the prison in Huntingdon County and driven to Pittsburgh, whereupon he refused to cooperate with the psychologist because of his dispute with his attorney. Appellant claims that he informed the trial court in a letter that he would refuse to cooperate with the upcoming mental health exam because it was a psychological exam and not a psychiatric exam.[2] Attorney Stewart eventually felt compelled to ask the trial court to allow him to withdraw, and on November 2, 1990, formally made application to withdraw. On November 20, 1990, the trial court issued an order granting his application, and appointing appellant's present attorney, Jeffrey Stover. The same order also granted new counsel's request for a psychiatric exam, thus indicating that Attorney Stover was not remiss in arranging for a mental health evaluation himself. On December 17, 1990, the trial court issued an order which arranged for the Huntingdon County Sheriff's Office to transport appellant to the psychiatric examination.

On December 24, 1991, the appellant underwent the psychiatric exam. The resulting report states that the defendant is an alcoholic[3] who was suffering chronic depression at the time of the murders. On the day of the murders, as

2. *See* Transcript of Proceedings, September 28, 1990, p. 17. The record does not reflect the existence of such a letter. However, the trial court declined to refute the existence of such a letter when appellant explained that he had given notice to the court he would refuse a psychological examination. *See Id.*

3. The report notes that appellant claimed to have consumed over twelve bottles of beer daily for twenty years before the murder. He also was a drug user, marijuana and psychedelic mushrooms being his drugs of choice.

was typical, he had been drinking heavily.[4]  The psychiatric report expresses regret that the examination was given so far in time from the murder, that it was now impossible for the evaluating psychiatrist to determine what the appellant's mental state was at the time of the shootings.  The report posits that an examination conducted shortly after the murders may have been able to ascertain the appellant's exact mental state at the time of the murders.  The report also opines that at the present time the appellant was competent to stand trial and to cooperate with counsel.  The report is dated January 16th, and presumably appellant and his attorney had access to the report before February 4th, the day he pled guilty.

On February 4, 1991, the appellant pled guilty to the murders as part of a plea agreement arranged by present counsel.  In exchange for the Commonwealth's promise not to seek the death penalty, the appellant pled guilty to one count of 1st degree murder and one count of 3rd degree murder.  The trial court gave the appellant an extensive guilty plea colloquy to ascertain whether his plea was knowingly and voluntarily given.  The trial court then postponed the sentencing until it could have the benefit of a presentence report.  At the subsequent sentencing hearing held on April 18, 1991, the appellant asked to withdraw his plea and the trial court refused.  In response to the trial court's query, appellant gave two reasons why his plea should be withdrawn.  He alleged that his defense was prejudiced because his first attorney failed to attain for him a mental health evaluation expediently.  Moreover, he claimed that prison guards tampered with his mail, thus effecting his ability to properly communicate with his attorney.  The trial court ordered a continuance of eleven days for the appellant to file a written motion to withdraw his guilty plea.  Appellant filed the motion and after a hearing on the motion on May 10, 1991, the trial court denied appellant's motion.  In accordance with the plea arrange-

---

4. The report notes that appellant's brother, Jim Turiano, estimated the appellant's intake of beer on the afternoon of the murder to be a case of beer in six hours.

ment, appellant was sentenced to life imprisonment on the first-degree murder charge and to a consecutive 10–20 year term for third-degree murder. In his subsequent opinion on the motion, the trial court emphasized that the appellant's plea was knowing and voluntary and that fraud would be perpetrated on the court if the appellant was allowed to contradict his guilty plea hearing confession.

■ The present standard for determining whether a defendant before his sentence can withdraw a guilty plea was first articulated in 1973 in the seminal case *Commonwealth v. Forbes, supra.* A request to withdraw a guilty plea has to meet both prongs of the following two-part test. First, a withdrawal cannot be granted if to do so would substantially prejudice the prosecution. *Commonwealth v. Anthony,* 504 Pa. 551, 561, 475 A.2d 1303, 1308–1309 (1984); *Forbes, supra,* 450 Pa. at 191, 299 A.2d at 271. Second, a withdrawal request made prior to sentencing should be granted for any "fair and just" reason. *Anthony, supra,* 504 Pa. at 561, 475 A.2d at 1308–1309; *Forbes, supra,* 450 Pa. at 192, 299 A.2d at 271.

■ Although there is no absolute right to withdraw a guilty plea, *Commonwealth v. Cole,* 387 Pa.Super. 328, 331, 564 A.2d 203, 204 (1989) (en banc), requests to withdraw guilty pleas prior to sentencing should be "liberally allowed." *Commonwealth v. Shaffer,* 498 Pa. 342, 345, 446 A.2d 591, 593 (1982); *quoting Forbes, supra,* 450 Pa. at 190, 299 A.2d at 271. *Commonwealth v. Jackson,* 390 Pa.Super. 639, 646, 569 A.2d 964, 968 (1990). A trial court's decision as to whether to allow a guilty plea to be withdrawn will not be disturbed absent an abuse of discretion. *Commonwealth v. Boatwright,* 404 Pa.Super. 75, 82–83, 590 A.2d 15, 19 (1991); *Commonwealth v. Jones,* 389 Pa.Super. 159, 162, 566 A.2d 893, 894 (1989), *alloc. denied,* 525 Pa. 632, 578 A.2d 926 (1990). A trial court must exercise its discretion with a view towards permitting withdrawal for any fair and just reason. *Commonwealth v. Hayes,* 462 Pa. 291, 300, 341 A.2d 85, 90 (1975); *Commonwealth v. Woods,* 452 Pa. 546, 550, 307 A.2d 880, 881 (1973).

The existence of substantial prejudice to the Commonwealth has been called *the crucial factor* in determining whether to allow a presentence withdrawal. (emphasis court's) *Commonwealth v. McLaughlin,* 469 Pa. 407, 412, 366 A.2d 238, 241 (1978); *Jackson, supra,* 390 Pa.Super. at 646, 569 A.2d at 968. Here, the Commonwealth readily concedes that it will not be prejudiced if the guilty plea is withdrawn. The Commonwealth has declared that it will be in the same position presently as it was when the appellant pled guilty in February. Given this admission, it only remains for the appellant to establish the much less burdensome requirement that any "fair and just" reason exists for the defendant to withdraw his plea. We have found that where no prejudice exists to the Commonwealth, a defendant does not have to articulate a very substantial "fair and just" reason for us to find that a trial court erred in failing to grant a defendant's request to withdraw his plea before sentencing. *Commonwealth v. Reider,* 255 Pa.Super. 163, 165–166, 386 A.2d 559, 560 (1978).

We now address appellant's second argument, as we find it presents less difficulty. Appellant claims that the trial court should have allowed his guilty plea to be withdrawn because he claims his mail was interfered with, thus interfering with his communications with his attorney. Appellant argues in his brief that the Commonwealth did not present any testimony directly countering appellant's testimony. Appellant asserts that one particular communication was interfered with that may have affected his decision to plead guilty.

■ Although cognizant that a court should 'liberally allow' the withdrawal of a guilty plea before sentencing, we declare nevertheless that it was not an abuse of discretion for the trial court to find that the defendant's mere assertions that his mail was interfered with did not constitute a fair and just reason for withdrawing the plea. The Commonwealth presented testimony that describes the normal procedures for delivering and receiving legal mail which belied the appellant's testimony. As the court is the proper

entity to resolve questions of fact, the trial court had discretion to weigh and balance the testimony. Moreover, it was not incumbent on the Commonwealth to prove the negative. The appellant's conclusory testimony was the only evidence adduced as to the truth of his assertions. The trial court did not give credence to these naked allegations, and we feel that this was not an abuse of discretion. Certainly, if the allegations could be substantiated, we might be constrained to hold otherwise.

We find rather reluctantly, however, merit to the tenor of appellant's second argument. Appellant asserts that counsel was ineffective for alleged failure to arrange a mental health examination in a timely fashion for the appellant. Appellant claims that his sole defense, given the overwhelming evidence against him, was the absolute defense of insanity.[5] However, he argues, appellant's first attorney did not arrange a mental health examination until nearly three months after the crimes. This was despite appellant having made forcefully clear to his attorney shortly after the crimes that he thought it was in his best interests to receive a psychiatric examination as soon as possible. He notes that there was no reason to delay such an examination, because if the report had been unfavorable, it simply would not be used. A favorable report, however, may have greatly assisted the appellant in establishing a successful defense. A mental health evaluation attained by the appellant's second counsel supported an insanity defense, although it stated that it was speculative whether or not it could be conclusively found that appellant had the *mens rea* for the crime, due to the length of time between the murders and the evaluation. It is important to observe that this report supported appellant's argument as to the importance of the temporal aspect of his examination.

We believe appellant's counsel, in light of the lenient standard he has to meet under the second prong of *Forbes*,

5. See 18 Pa.C.S.A. § 315.

argues too much by asserting ineffectiveness of counsel.[6] It is enough that appellant currently believes he has an insanity defense. In *Reider, supra,* a criminal defendant pled guilty based on a psychiatric exam that concluded he was not insane at the time of the offense. Subsequent to his plea, he received another mental health evaluation. Although the second exam did not conclude the defendant was legally insane, it did state he suffered from paranoia. In a per curiam decision, this court held that the *possibility* that the defendant had an insanity defense, absent prejudice to the Commonwealth, required that the Court find the lower court abused its discretion in denying the defendant's request to withdraw his plea. We asserted that when the Commonwealth is not prejudiced, we would accept a reason for withdrawing the plea which appeared not very substantial. As the *Forbes* standard indicates, " '[a] trial court, [in presentence situations], abuses its discretion by not allowing a guilty plea to be freely withdrawn prior to sentencing when the Commonwealth would not be substantially prejudiced by the plea withdrawal.' " *McLaughlin, supra,* 469 Pa. at 412, 366 A.2d at 241, *quoting Commonwealth v. Santos,* 450 Pa. 492, 496, 301 A.2d 829, 831 (1973).

Although not argued by the appellant, we find quite significant that the record displayed a total lack of cooperation between the appellant and his first attorney. We have found that this, alone, can constitute a "fair and just reason" to withdraw a plea before sentencing. *McLaughlin, supra,* 469 Pa. at 413, 366 A.2d at 241. The record indicates that the appellant instructed his attorney to seek for him a psychiatric examination immediately. The attorney did not act to obtain an exam for him until nearly three months from the crime, and the exam he attained was a psychological exam, not a psychiatric exam. Upon finding out that the exam scheduled was a psychological exam rather than a psychiatric exam, appellant refused to partic-

6. In any event, because of the conclusions we reach in the opinion, we would find merit in appellant's ineffectiveness claim. *Commonwealth v. Durst,* 522 Pa. 2, 4–5, 559 A.2d 504, 505 (1989) (reciting three-part test to determine ineffectiveness of counsel).

ipate with it or his attorney henceforth. It was not until late November that a new counsel was assigned to the appellant, who, although promptly arranging for a new psychiatric examination, could not arrange one until the end of December. This examination provided results of limited value, it being given six months after the crime. Defendant's contentious history with his first attorney resulted in a six-month delay in the attainment of a crucial piece of evidence. When he received that evidence, it was quite debatable to what extent it could successfully support a potential insanity defense. We must conclude that given the history, the *Forbes* standard fully supports appellant's quest to withdraw his plea.

Admittedly, we are reluctant to reverse the trial court because we agree that appellant must have known of the alleged defense before he pled guilty on February 4, 1991. Nevertheless, *Forbes* illustrated the adoption of an almost paternalistic concern for the rights of a pleading defendant. However, it appears to us that the concerns for the rights of a defendant, which in 1973 led to the adoption of the relaxed *Forbes* pre-sentence withdrawal standard, should now militate in favor of a heightened standard of entitlement to withdrawal in light of the very substantial changes in the submission of guilty pleas since 1973. In *Forbes*, a criminal defendant, after initially pleading guilty, expressed before sentencing his innocence. The court then deferred the matter until a hearing could be held on appellant's request to withdraw a plea. At the hearing, the appellant claimed no longer to desire the plea to be withdrawn, but after questioning by the court it was revealed that defendant only pled guilty because of his counsel's threat to withdraw from the case if he didn't. Notwithstanding, the lower court proceeded to accept the plea and sentence him. On appeal to the Supreme Court, it was held that henceforth the above mentioned two prong test would be used to evaluate the withdrawal of a plea before sentencing.[7] The

---

7. The Court adopted this standard from the then current standard in federal courts. *See Forbes, supra; see also, United States ex rel.*

Court, quoting from a recent federal opinion, provided the following reasons why the new standard was efficacious:

> The liberal rule for withdrawal of a guilty plea is consistent with the efficient administration of criminal justice. It reduces the number of appeals contesting the 'knowing and voluntariness' of a guilty plea, and avoids the difficulties of disentangling such claims. It also ensures that a defendant is not denied a right by trial unless he clearly waives it.

*Forbes, supra,* 450 Pa. at 191, 299 A.2d at 271, *quoting United States v. Young,* 424 F.2d 1276, 1279 (3rd Cir.1970). The *Forbes* Court then found that an assertion of innocence constituted a fair and just reason for withdrawing the plea.

We submit that, given the developments in the thoroughness of the guilty plea colloquy, the efficient administration of justice is no longer served by the *Forbes* standard. Although as early as 1963 there existed a lenient rudimentary requirement in our Commonwealth that pleas be taken in open court and that a judge ascertain whether the plea was knowingly and understandably tendered, *see* 42 R.Crim.P. 319(a) (effective Jan. 1, 1965), the essential elements of the colloquy as we know it were not molded by our Supreme Court until the mid-seventies. *See Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977); *Commonwealth v. Dilbeck,* 466 Pa. 543, 353 A.2d 824 (1976). At that time, the Court declared that at a minimum, a judge should ask questions to elicit the following information:

> (1) Does the defendant understand the nature of the charges to which he is pleading guilty?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he has a right to trial by jury?

*Culbreath v. Rundle,* 466 F.2d 730 (3rd Cir.1972); Note, *Pre–Sentence Withdrawal of Guilty Pleas in Federal Courts,* 40 N.Y.U.L.Rev. 759 (1965). The Court noted that the standard was in complete harmony with ABA standards. *See Forbes, supra; see also* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 2.1(b) (Approved Draft, 1968).

(4) Does the defendant understand that he is presumed innocent until proven guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of the plea agreement unless the judge accepts such agreement?

*Willis, supra,* 471 Pa. at 51–52, 369 A.2d at 1189–1190; *Dilbeck, supra,* 466 Pa. at 547, 353 A.2d at 826–827. As of 1977, it was possible for at least some commentators to assert:

> Because of close judicial scrutiny, however, guilty plea colloquies may no longer be treated lightly. Rather, they must be approached both by court and counsel with at least the care and precision required in any other criminal proceeding.

Gafni and Shellenberger, *The Changing Criminal Law: Guilty Plea Colloquy in Pennsylvania,* 48 Pa.B.A.Q. 259 (1977) (discussing the recent developments of guilty plea colloquies).

We submit that the developments in the guilty plea colloquy have so successfully fulfilled the policy concerns underlying *Forbes* that the standard itself is obsolete. An extensive guilty plea colloquy undoubtedly is more effective in conserving judicial resources than the *Forbes* standard. Rather, it seems the post sentence standard of manifest injustice should be the appropriate standard in all cases. The guilty plea colloquy should reduce the numbers of appeals contesting the 'knowing and voluntariness' of a guilty plea much more effectively than the *Forbes* standard. It ascertains from the defendant's mouth, on-the-record and in all particulars, that the defendant understands the nature of his rights, of the alleged crime, and of the potential punishment. Moreover, once a defendant is aware of the utmost seriousness of the colloquy, he is less likely to be able to believe he can withdraw the plea. Judicial resources, additionally, are expended every time a defendant is given a colloquy, which can be quite extensive. The *Forbes* standard thus results in the expenditure of precious

time on a procedure that is not, for all intents and purposes, final. Finally, and most importantly, a guilty plea colloquy ensures that a criminal defendant clearly understands the significance of the constitutional rights he is waiving. The *Forbes* standard accordingly undermines the guilty plea colloquy by giving the impression that a pre-sentence plea can be liberally withdrawn.[8]

We must recognize the seeming incongruity of our recent decisions which appear to belie the directive that a court should liberally allow guilty pleas to be withdrawn before sentencing. At one time, it was readily apparent that "the mere assertion of innocence is a 'fair and just reason' for permitting the withdrawal of a guilty plea prior to sentencing." *Commonwealth v. McCall*, 320 Pa.Super. 473, 480, 467 A.2d 631, 634 (1983); *Accord Commonwealth v. Woods*, 452 Pa. 546, 551, 307 A.2d 880, 882 (1973); *Commonwealth v. Ortiz*, 334 Pa.Super. 117, 120, 482 A.2d 1110, 1111 (1984); *Commonwealth v. Kay*, 330 Pa.Super. 89, 94, 478 A.2d 1366, 1368 (1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 2009, 85 L.Ed.2d 293 (1985); *Commonwealth v. Whittall*, 304 Pa.Super. 258, 264, 450 A.2d 669, 673 (1982). *Commonwealth v. Boofer*, 248 Pa.Super. 431, 433, 375 A.2d 173, 174 (1977). These cases notwithstanding, opinions in our Commonwealth have recently expressed reluctance to accept assertions of innocence. *Boatwright, supra*, 404 Pa.Super. at 84, 590 A.2d at 20 (belated assertion of innocence does not constitute a fair and just reason for pre-sentence withdrawal of plea); *Cole, supra*, 387 Pa.Super. at 335, 564 A.2d at 206 (en banc) (bald assertion of innocence does not

8. This concern has been articulated by several courts as a similar worry that defendants are making bald assertions of innocence as grounds to withdraw a guilty plea prior to sentencing. Defendants should not be "permitted to make a mockery of the guilty plea process in which the appellant, after a full and complete colloquy, admitted his guilt and his role [in the pertinent crimes]." *Commonwealth v. Jones*, 389 Pa.Super. 159, 164, 566 A.2d 893, 895 (1989), *alloc. denied*, 525 Pa. 632, 578 A.2d 926, *quoting Cole, supra*, 387 Pa.Super. at 335, 564 A.2d at 206 (*en banc*); *Accord, Cole, supra*, 387 Pa.Superior Ct. at 339, 564 A.2d at 208 (Concurring Opinion by Kelly, J.); *Commonwealth v. Ortiz*, 334 Pa.Super. 117, 121–123, 482 A.2d 1110, 1111–1113 (1984) (Dissenting Opinion by McEwen, J.)

constitute fair and just reason for pre-sentence withdrawal of plea); *see also, Commonwealth v. Kerbacher,* 527 Pa. 545, 548, 594 A.2d 655, 656 (1991) ("In analyzing what is fair and just ... a knowing and intelligent guilty plea will not be abrogated by a subsequent assertion of a speculative right where such purported right does not call into question the factual basis for the plea and/or the voluntariness of the plea.") Moreover, decisions in this Commonwealth have recently emphasized the importance of a 'knowing and voluntary' plea as evidenced by a thorough guilty plea colloquy. *See, e.g., Kerbacher, supra,* 527 Pa. at 548, 594 A.2d 655, 656–657 (Court references colloquy in pertinent part); *Commonwealth v. Anthony,* 504 Pa. 551, 561–562, 475 A.2d 1303, 1309 (1984) (no fair and just reason exists where defendant, after asserting at his sentencing hearing that he "didn't fully understand it [the guilty plea]," reaffirmed his earlier plea); *Cole, supra,* 387 Pa.Super. at 335, 564 A.2d at 206 (court *en banc* emphasizes importance of colloquy); *Ortiz, supra,* 334 Pa.Super. at 121–123, 482 A.2d at 1111–1113 (Dissenting Opinion by McEwen, J.) (noting that guilty plea colloquy displayed voluntariness of plea).

The *Forbes* standard, as perhaps this case indicates, is a trap for lawyers not thoroughly acquainted with our reluctance to adhere to it. The Siren song of the *Forbes* standard lures criminal defense attorneys into the false hope that the guilty plea colloquy does not for all practical purposes finalize the proceedings, only to dash these hopes on the rocks of our reluctance to follow it. As our case law illustrates, "fair and just" is too nebulous a guide for practitioners, and reasoned disposition mandates that Pennsylvania promulgate a rule that accurately reflects the state of the law. This supposedly liberal standard for the withdrawal of guilty pleas is currently neither liberal nor much of a standard. The deceptive standard gives a criminal defendant whose plea is not permitted to be withdrawn a prime opportunity to raise an ineffectiveness of counsel claim. Namely, counsel was ineffective for advising that a plea could be liberally withdrawn pre-sentencing.

■ Although under the *Forbes* standard the mere assertion of innocence or a possible insanity defense constitutes a "fair and just reason" for withdrawing a plea, the facts of this case militate in favor of a change in the standard. Appellant has expressed no changed circumstance that would constitute a "fair and just" reason for the appellant to withdraw his plea. Appellant had possession of the above psychological evaluation on the day he entered his plea of guilty. The same counsel represented the appellant when he entered the plea and also when he wished to withdraw it. Moreover, the appellant has not asserted his guilty plea colloquy was defective, nor that his plea was the result of coercion or confusion.[9] The appellant has not provided the trial court with any reason for allowing the plea to be withdrawn that was not available to him before the colloquy. Notwithstanding the foregoing reasons for which we granted appellant's request, finding in favor of the appellant means that the simple fact that appellant seems to have changed his mind constitutes a "fair and just" reason for allowing him to withdraw his guilty plea.[10] While allowing a defendant to reconsider may have served important policy concerns at one time, the same concerns are better served today by holding defendants to their pleas made "knowingly and voluntarily" at the guilty plea colloquy. The entrance of a guilty plea we submit is no longer a perfunctory hearing, or even of only penultimate significance. Rather, the guilty plea hearing has become *the*

9. It is pertinent to note that in the author of the January 16, 1991 psychiatric report's opinion, appellant was competent to stand trial. Thus, we submit he was competent to 'knowingly and voluntarily' enter a plea of guilty on February 4, 1991. Appellant, in fact, does not challenge that he was competent to enter the plea.

10. We note that where a defendant wishes to withdraw his plea *after* sentencing and alleges ineffectiveness of counsel, there must exist a nexus between the counsel's actions and the involuntary or unknowing plea. *Commonwealth v. Terreforte*, 387 Pa.Super. 453, 459–460, 564 A.2d 479, 482 (1989); *Commonwealth v. Vance*, 376 Pa.Super. 493, 498, 546 A.2d 632, 635 (1988); *Commonwealth v. West*, 336 Pa.Super. 180, 185–186, 485 A.2d 490, 493 (1984). We have found no case that has extended this rule to situations where a defendant requests his plea be withdrawn pre-sentencing.

significant procedure for those defendants who choose to plead guilty. We should recognize this fact. We should also recognize that the *Forbes* standard, if anything, emasculates the significance of a guilty plea colloquy and encourages defendants dissatisfied with their plea to contradict their confession of guilt sworn to under oath.

In conclusion, we find that following, as we must, the dictates of *Forbes* and a long line of Pennsylvania precedents relating to the standard to be applied for withdrawal of a guilty plea prior to sentencing mandate, that in this case we must reverse and vacate the judgment of sentence of the trial court, direct that the guilty plea be withdrawn and remand for further proceedings. At the same time, we urge that our Supreme Court reverse the standard set forth in *Forbes* and subsequent cases and mandate that in all cases following the entry of a proper guilty plea, the standard for withdrawing a guilty plea be that such should be permitted only to avoid a manifest injustice, whether the request is made before or after sentencing.

Judgment of sentence reversed, remanded with directive that the guilty plea be withdrawn.