J-S40007-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WESTLEY A. CLEVENGER, | |
| Appellant | No. 542 WDA 2012 |

Appeal from the Judgment of Sentence January 23, 2012
in the Court of Common Pleas of Cambria County
Criminal Division at No.: CP-11-CR-0000703-2011

BEFORE: GANTMAN, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.                    **FILED MARCH 21, 2016**

Appellant, Westley A. Clevenger, appealed from the judgment of sentence for one count of involuntary deviate sexual intercourse with a person less than sixteen years of age (IDSI), imposed pursuant to a negotiated plea agreement. Specifically, he challenged the trial court's denial of his pre-sentence motions to withdraw his guilty plea. We vacated the judgment of sentence and remanded for trial. The Commonwealth petitioned our Supreme Court for allowance of appeal. The Court granted the petition, vacated our order, and remanded for reconsideration in light of ***Commonwealth v. Carrasquillo***, 115 A.3d 1284 (Pa. 2015), and

_____

[*] Retired Senior Judge assigned to the Superior Court.

***Commonwealth v. Hvizda***, 116 A.3d 1103 (Pa. 2015).[1]    On reconsideration, in light of ***Carrasquillo*** and ***Hvizda***, we affirm.

The context of the underlying case is material to our review.  We derive the facts from the trial court's opinion and our independent review of the certified record.

Appellant was living in a room in the house of his son and daughter-in-law.  (***See*** N.T. Suppression Hearing, 10/20/11, at 11).  The investigation into this matter began when Appellant's daughter-in-law and other members of his family found a diary, kept in a journal, in his room.  In it he detailed his sexual encounters and other interactions with the Victim, a teenage girl, identifying her by name.  They also found four Polaroid photographs of the Victim, nude or partially nude.  One included her face.  (***See id.*** at 4).  Appellant's son identified notations on the photographs as being in the handwriting of his father.  (***See id.*** at 11).  Dates on the photos matched dates in the journal.

_____

[1] (***See Commonwealth v. Clevenger***, 125 A.3d 774 (Pa. 2015) (*per curiam*)):

> AND NOW, this 17th day of November, 2015, the Petition for Allowance of Appeal is GRANTED, the order of the Superior Court is VACATED, and the matter is REMANDED for reconsideration in light of ***Commonwealth v. Carrasquillo***, --- Pa. ----, 115 A.3d 1284 (2015), and ***Commonwealth v. Hvizda***, --- Pa. ---, 116 A.3d 1103 (2015).  The Petition to Remand is DENIED.

Local police, recognizing that the offenses had occurred in another jurisdiction (before Appellant moved in with his son's family), referred the matter to the Pennsylvania State Police. (*See id.* at 17).

In his affidavit of probable cause, investigating Trooper Mark A. Galli reported that the Victim informed him that Appellant had previously been her next door neighbor. (*See* Affidavit of Probable Cause, 3/10/11). The Victim told the trooper that for two years Appellant repeatedly engaged in sexual acts with her. He digitally penetrated her vagina, had her perform oral sex on him, and engaged in vaginal intercourse with her. He also took photographs of her. Appellant threatened to harm her family if she did not comply with his demands. (*See id.*).

Once, Appellant lured the Victim into his residence on the false pretext that her father was on the telephone. When she tried to escape, she fell over a fence and was knocked unconscious. When she woke up, she was naked and tied to a futon in Appellant's house. She managed to escape later. (*See id.*).

The Commonwealth charged Appellant with **one hundred and fifty-five** counts involving the sexual abuse of the Victim and related offenses beginning in November 2008 (when she was thirteen) until over two years

later (January 2011).[2] Appellant, born in 1952, was fifty-six when the crimes began. (**See** Complaint, 3/10/11, at 1).

Appellant filed a motion to suppress (journal, photographs, statements), which the court denied, after a hearing on October 20, 2011. (**See** Order, 10/21/11).

On November 1, 2011, two days before trial, Appellant pleaded guilty to one count of IDSI with a person less than sixteen years of age. (**See** N.T. Guilty Plea, 11/01/11, at 2). In exchange for the guilty plea, the Commonwealth agreed to *nol pros* the remaining **one hundred and fifty-four** charges, and recommend a sentence of ten to twenty years' incarceration.

It bears noting that as an express condition of his plea agreement Appellant agreed to participate in an evaluation by the Sexual Offenders Assessment Board (SOAB) to determine if he should be classified as a sexually violent predator, waiving any objections.[3]

_____

[2] Specifically, the Commonwealth charged Appellant with thirty counts each of rape by threat of forcible compulsion, IDSI, statutory sexual assault, aggravated indecent assault, and indecent assault. **See** 18 Pa.C.S.A. §§ 3121(a)(2), 3123(a)(7), 3122.1(b), 3125(a)(8), and 3126(a)(8), respectively. Appellant was also charged with one count each of kidnapping, luring a child into a motor vehicle or structure, unlawful restraint, false imprisonment, and harassment. **See** 18 Pa.C.S.A. §§ 2901(a)(2), 2910(a), 2902(a)(2), 2903(a), and 2709(a)(3), respectively.

[3] Appellant also agreed to comply with the reporting requirements of the then applicable version of "Megan's Law" and to pay restitution costs. *(Footnote Continued Next Page)*

Two months later, on January 12, 2012, Appellant filed a counseled motion to withdraw his guilty plea, in which he asserted his innocence. (**See** Motion to Withdraw Guilty Plea, 1/12/12). The trial court denied this motion without a hearing on January 17, 2012. At the sentencing hearing on January 23, 2012, counsel for Appellant made an oral motion for the court to reconsider the denial of the motion to withdraw, asking the court to hold a hearing, and once more proclaiming his innocence. (**See** N.T. Sentencing, 1/23/12, at 3, 38).

The trial court denied the motion, citing its extensive colloquy with Appellant at the guilty plea hearing, and the specifically negotiated term of incarceration. (**See id.** at 4).

Prior to sentencing, the court also held a "Megan's Law" hearing. Despite his promise, Appellant had refused to cooperate. (**See supra** at *4 n.3). After testimony and a report from SOAB expert William G. Allenbaugh, II, the court found Appellant to be a sexually violent predator (SVP). (**See id.** at 36). Defense counsel argued that Appellant's refusal to cooperate with the SOAB assessment was consistent with his statement of innocence. (**See id.** at 37).

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

Despite this, and the apparent prior assurance of counsel that his client would cooperate, on December 6, 2011 Appellant declined to speak with SOAB investigator Michael Emhoff, or otherwise participate in the SOAB assessment. (**See** SOAB Investigation Report, 12/21/11, at 3; **see also** N.T. Sentencing, 1/23/12, at 12).

At the sentencing hearing, Appellant himself explained his about-face to the court in this way: "On the guilty plea, I was determined that I could beat 152 of the charges, that there was [sic] three that I might not have been able to beat." (*Id.* at 38). He further claimed that defense counsel informed him that if he did not plead, the trial court judge would give him the maximum sentence on **each** of the charges. (*See id.*). "So that's when I thought about it, and I said I would rather have the jury trial and decide [sic]." (*Id.* at 39).

After hearing from one witness,[4] the trial court sentenced Appellant to the previously agreed sentence of not less than ten nor more than twenty years' incarceration in a state correctional institution. The court added, *inter alia*, that Appellant was "without a doubt a clear and present danger to society." (*Id.* at 43).

In explaining his denial of Appellant's motion to withdraw the guilty plea, the trial judge stated, "I truly believe you knew exactly what you were

---

[4] Notably, at sentencing, Appellant's daughter, Bambi Buchkoski, read a prepared statement into the record, against him. (*See* N.T. Sentencing, at 40-41). Ms. Buchkoski had reported to Trooper Galli that she, too, had been molested by Appellant when she was a child. (*See* Affidavit of Probable Cause, (Interviews), 3/11/11, at 3). Even though the sentence was for the agreed term, the trial court also expressly noted that it had reviewed the presentence investigation report, the testimony and report of SOAB expert Allenbaugh, and the affidavit of probable cause. (*See* N.T. Sentencing, at 42-43, 45). The court also noted that Appellant was not RRRI eligible, based on his prior record. (*See id.* at 45).

doing." (*Id.* at 44). The judge also ascribed Appellant's attempt to withdraw his plea to "playing games." (*Id.* at 45).

On January 25, 2012, Appellant filed a counseled post-sentence motion challenging the trial court's denial of his two prior motions to withdraw his guilty plea; he maintained his innocence. (*See* Post-Sentence Motion, 1/25/12). On February 20, 2012, the trial court held a hearing on the post-sentence motion. The Victim's mother offered the only testimony. (*See* N.T. Motion to Withdraw Guilty Plea, 2/20/12, at 5-14). The trial court denied Appellant's motion on March 20, 2012. (*See* Trial Court Opinion and Order, 3/20/12, at 1-9).

Appellant filed a timely notice of appeal[5] on March 22, 2012, and submitted a timely 1925(b) statement of errors on April 12, 2012. *See* Pa.R.A.P. 1925(b). The trial court filed a 1925(a) statement on May 8, 2012, referencing its March 20, 2012 Opinion and Order. *See* Pa.R.A.P. 1925(a).

Appellant raised one question (with two combined claims) on appeal:

---

[5] An appeal in a criminal matter "is properly taken from the judgment of sentence, as opposed to the order denying [an] [a]ppellant's post-sentence motions." *Commonwealth v. Olavage*, 894 A.2d 808, 809 n.1 (Pa. Super. 2006), *appeal denied*, 907 A.2d 1102 (Pa. 2006) (citation omitted). Here, Appellant improperly appealed from the March 20, 2012 order denying his post-sentence motion. (*See* Notice of Appeal, 3/22/12). However, we note that Appellant properly stated in his brief that the appeal was taken from the January 23, 2012 judgment of sentence. (*See* Appellant's Brief, at 2). We have changed the caption accordingly.

I. Whether the sentencing court abused its discretion by not permitting [Appellant] to withdraw his guilty plea where he asserted his innocence and the alleged [V]ictim would be able to testify at trial[?]

(Appellant's Brief, at 4).

Appellant argued that the court should have permitted his motion to withdraw under the liberal standard for granting plea withdrawals prior to sentencing, under **Commonwealth v. Forbes**, 299 A.2d 268 (Pa. 1973), and **Commonwealth v. Randolph**, 718 A.2d 1242, 1245 (Pa. 1998). (**See** Appellant's Brief, at 9-10). We disagree.

On review after remand, we are mindful of the following legal principles:

> A guilty plea is not a ceremony of innocence, it is an occasion when one offers a confession of guilt . . . . The defendant is before the court to acknowledge facts that he is instructed constitute a crime. . . . He is then to voluntarily say what he knows occurred, whether the Commonwealth would prove them or not, and that he will accept their legal meaning and their legal consequence. A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. A defendant will not be permitted to postpone the final disposition of his case by lying to the court concerning his culpability and thereafter withdraw his plea of guilty by contradicting his prior testimony and asserting innocence.

**Commonwealth v. Cole**, 564 A.2d 203, 206 (Pa. Super. 1989) (citations and internal quotation marks omitted).

A motion to withdraw a guilty plea before sentencing is governed by Pennsylvania Rule of Criminal Procedure 591, which in pertinent part provides that "[a]t any time before the imposition of sentence, the court

- 8 -

may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P. 591(A).

> The standard of review that we employ in challenges to a trial court's decision regarding a presentence motion to withdraw a guilty plea is well-settled. "A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion. An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." **Commonwealth v. Pardo**, 35 A.3d 1222, 1227 (Pa. Super. 2011) (quoting **Commonwealth v. Prysock**, 972 A.2d 539, 541 (Pa. Super. 2009); citing *262 **Commonwealth v. Anthony**, 504 Pa. 551, 475 A.2d 1303, 1308 (1984)). In its discretion, a trial court may grant a motion for the withdrawal of a guilty plea at any time before the imposition of sentence. Pa.R.Crim.P. 591(A). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing . . . should be liberally allowed." **Commonwealth v. Forbes**, 450 Pa. 185, 299 A.2d 268, 271 (1973). The policy underlying this liberal exercise of discretion is well-established: "The trial courts in exercising their discretion must recognize that 'before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution.' " **Commonwealth v. Santos**, 450 Pa. 492, 301 A.2d 829, 830 (1973) (quoting **Commonwealth v. Neely**, 449 Pa. 3, 295 A.2d 75, 76 (1972)). In **Forbes**, our Supreme Court instructed that, "in determining whether to grant a presentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.' " **Forbes**, 299 A.2d at 271 (quoting **United States v. Stayton**, 408 F.2d 559, 561 (3d Cir. 1969)).

**Commonwealth v. Elia**, 83 A.3d 254, 261-62 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014); **see also Forbes**, **supra** at 271 ("If the trial court finds 'any fair and just reason', withdrawal of the plea before

sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'"). In **Randolph** our Supreme Court added:

> We wish to make it clear that we do not now, nor have we ever, abandoned, altered or modified the standard articulated in **Forbes** regarding a defendant's ability to withdraw a guilty plea prior to sentencing. Consequently, we are troubled, to say the least, by the Superior Court's cavalier disregard of the **Forbes** standard, which appears to be motivated not by the facts of this case, but instead by the Superior Court's steadfast disagreement with this Court's rationale set forth therein. **See**, **e.g. Commonwealth v. Turiano**, 411 Pa. Super. 391, 601 A.2d 846, 851-2 (1992), where the Superior Court noted its reluctance to follow **Forbes** and its desire to abandon the standard set forth therein based upon its belief that the standard has become obsolete. We take this opportunity to admonish the Superior Court that it is obligated to apply and not evade our decisions. It is a fundamental precept of our judicial system that a lower tribunal may not disregard the standards articulated by a higher court.

**Randolph**, **supra** at 1245.

Because the application of the **Forbes** standard raises questions of law, our standard of review is *de novo*, and our scope of review is plenary. **See Carrasquillo**, **supra** at 1291; **see also Commonwealth v. Farabaugh**, 128 A.3d 1191, 1193 (Pa. 2015).

Our Supreme Court has recently clarified its position on many of the challenges which have arisen over the years in applying **Forbes** and **Randolph**, and their progeny, on appeal. Most notably, in **Carrasquillo**, the Court explained:

> Our decision turns on the conclusion that a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request.

- 10 -

* * *

[A] defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. . . . More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

*Carrasquillo*, *supra* at 1285, 1292; *accord*, *Hvizda*, *supra* at 1107 ("a bare assertion of innocence—such as Appellee provided as the basis for withdrawing his guilty plea—is not, in and of itself a sufficient reason to require a court to grant such a request.").

Here, applying the principles enunciated in *Carrasquillo* and *Hvizda*, we conclude that Appellant offers no more than a bare assertion of innocence, insufficient to justify, let alone require, the grant of a withdrawal of his guilty plea.

Appellant argues that "a clear assertion of innocence [ ] suffices under governing caselaw as a 'fair and just reason' for withdrawal[.]" (Appellant's Brief, at 10). We disagree.

As already noted, the *Carrasquillo* Court rejected the *per se* approach to innocence claims, holding that a bare assertion of innocence is **not**, in and of itself, a sufficient reason to require a court to grant such a request. Rather, the trial court retains a "degree of discretion" in determining

- 11 -

whether the defendant's innocence claim is plausible. ***Carrasquillo***, ***supra*** at 1292.

Appellant further argues that the trial court made an impermissible determination of the credibility of his claim of innocence. (***See*** Appellant's Brief, at 12-16). In support, he cites ***Commonwealth v. Katonka***, 33 A.3d 44, 49 (Pa. Super. 2011) (*en banc*). ***Katonka***, in turn, cites ***Randolph***, ***supra*** at 1244.

However, in ***Carrasquillo*** our Supreme Court, while "acknowledg[ing] the legitimate perception of a *per se* rule arising from this Court's decisions[,]" in effect abrogated the ***Randolph***/***Katonka*** disapproval of credibility determinations by the trial court: "[A] defendant's innocence claim **must be at least plausible** to demonstrate, **in and of itself**, a fair and just reason for presentence withdrawal of a plea." ***Carrasquillo***, ***supra*** at 1292 (emphases added).

The ***Carrasquillo*** Court explained that "[a]s with other such bright-line rules, however, the principle is subject to the axiom that the holding of a decision is to be determined according to the facts under consideration," (citing ***Oliver v. City of Pittsburgh***, 11 A.3d 960, 966 (Pa. 2011), ("the holding of a judicial decision is to be read against its facts")). ***Id.***

Similarly, in his concurrence, then-Justice Stevens disapproved a *per se* approach which prohibited trial courts from assessing the credibility of an "assertion of innocence" on a presentence motion to withdraw a guilty plea:

"This *per se* approach, which was based upon the utterance of 'magic words,' undermined the trial court's role as a finder of fact and removed necessary discretion from the court. I agree with the majority that such an approach was unsatisfactory." *Id.* at 1293 (Stevens, J., concurring).

In this case, the only explanation provided by Appellant for his claim of innocence amounted, at best, to a mere strategic calculation of the odds, and at worst, to a deliberate ploy to game the system. Specifically, as previously summarized, at sentencing this colloquy took place:

> THE COURT: You maintain today that you are innocent of the charges that you plead [sic] guilty to?
>
> [APPELLANT]: Yes.
>
> [DEFENSE COUNSEL]: You would like to go to trial on this?
>
> [APPELLANT]: Yes. On the guilty plea, I was determined that I could beat 152 of the charges, that there was [sic] three that I might not have been able to beat.

(N.T. Sentencing, at 38).

Then, in a somewhat rambling and disjointed narrative, Appellant claimed that he was told that if he went to trial, the court could (or would) impose thirty to sixty years' imprisonment on **each** of the three charges that he did not think he could "beat." He continued:

> [I] would have been like 90 or 100 years [old] when I got out of jail.
>
> So that's when I thought about it, and I said I would rather have the jury trial and [sic] decide.

- 13 -

[COUNSEL]: Is that all?

[APPELLANT]: Yes.

[COUNSEL]: I have **nothing else** Your Honor.

(*Id.* at 38-39) (emphasis added). The trial court decided that Appellant's claim of innocence was not only equivocal but not credible. (*See* Trial Ct. Op., 3/20/12, at 6-7).

It is not our purpose or intent to analyze Appellant's reasoning on its merits.[6] We simply observe that, despite counsel's insistence, the record strongly supports a finding that Appellant was not proclaiming his innocence except in the nominal, "magic words," pretextual sense. The record supports the conclusion that he was merely calculating the odds of what sentence he thought he could get in various circumstances. Pleader's regret, and hopes, however unfounded, of engineering a shorter sentence do not present a fair and just reason to permit the withdrawal of a guilty plea. Nor do they promote fairness and justice.

_____

[6] We observe objectively, however, that in the totality of circumstances his stated reasons make little sense. Leaving aside Appellant's tenuous grasp of mathematics, the length of sentence was fixed at the guilty plea hearing, when the trial court accepted the plea and recommended sentence. (*See* N.T. Guilty Plea, at 3-5). If, rightly or wrongly, he feared a longer sentence by going to trial, withdrawing his guilty plea was the exact opposite of what he should have done. The utter illogic of Appellant's stated reasoning supports the trial court's conclusion that he was engaging in gamesmanship.

Additionally, we note that when Appellant **did** get the requested[7] opportunity to present reasons, at the hearing on his post-sentence motion to withdraw guilty plea, he did not testify, or present any other evidence.

Instead, his counsel, after reciting some procedural history, made a cursory, conclusory boilerplate argument, consisting of the mere bald assertion that Appellant maintained his innocence and counsel's belief that the Commonwealth's witnesses were available, so there was no prejudice to the Commonwealth, and therefore he had met the standard for pre-sentence withdrawal. (**See** N.T. Motion To Withdraw Guilty Plea, 2/20/12, at 4).[8] Counsel did not develop any argument beyond the bare assertions. Appellant failed to present a fair and just reason to grant his motion to withdraw.

We observe that the reasoning in **Carrasquillo** is not without antecedents. **See Carrasquillo**, **supra** at 1290 n.6 (collecting cases).[9] In particular, we note the following observation:

---

[7] At sentencing, defense counsel had requested "a hearing[,] the opportunity to properly argue his motion." (N.T. Sentencing, at 3).

[8] As previously noted, the only witness was the Victim's mother, for the Commonwealth. (**See** N.T. Motion, 2/20/12, at 5-14).

[9] Our Supreme Court also cited, inter alia, Thomas P. Reilly, Note, Now I'm Guilty, Now I'm Not: The Automatic Right to Pre–Sentence Guilty Plea Withdrawals in Pennsylvania Since **Commonwealth v. Forbes**, 59 Vill. L. Rev. 305, 320–30 & nn. 85–138 (2014) (collecting cases) (offering a comparison between Pennsylvania cases governing presentence plea
*(Footnote Continued Next Page)*

I agree with the majority that an assertion of innocence will provide "just cause" to withdraw a guilty plea, in **some** cases. However, before I would find such an assertion to be "just cause" to withdraw a valid plea, I would require some credible explanation for the inconsistency between appellant's sworn admissions in support of the initial guilty plea and the subsequent assertion of innocence. Otherwise, a disingenuous incantation of the words "I now claim I am innocent" by judicial alchemy would become magic words with which to evade the legitimate requirement of "just cause" for withdrawal of the plea. Such a construction of our Supreme Court's precedents would constrain trial courts to reward rather than sanction the most disingenuous of such claims, and the most brazen of perjuries.

*Cole*, *supra* at 208 (Kelly, J., concurring) (emphasis in original).

Here, we discern no abuse of discretion or error of law by the trial court. Appellant's first claim lacks merit.

Appellant presents a companion claim that there is no prejudice to the Commonwealth because "the alleged victim would be able to testify at trial." (Appellant's Brief, at 4; *see also id.* at 16-19). Because of our resolution of the first claim, we have no need to address the second companion issue. *See Carrasquillo*, *supra* at 1293 n.9 ("In light of our disposition, above, we do not reach the second issue presented on appeal, which concerns prejudice to the Commonwealth.").

Judgment of sentence affirmed.

_____

*(Footnote Continued)* _____

withdrawal with those of other jurisdictions). *See Carrasquillo*, *supra* at 1290 n.6.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/21/2016