466 A.2d 1035

**Daniel B. BRANDSCHAIN and Robin Tiesler**

v.

**Fred LIEBERMAN.**

**Appeal of Daniel B. BRANDSCHAIN.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1983.

Filed Sept. 2, 1983.

Reargument Denied Nov. 10, 1983.

Petition for Allowance of Appeal Denied March 7, 1984.

Sidney M. Deangelis, Norristown, for appellants.

Richard S. Watt, Norristown, for appellee.

Before CERCONE, President Judge, and JOHNSON and MONTEMURO, JJ.

MONTEMURO, Judge:

■ This is an appeal from an Order of the Court of Common Pleas, Montgomery County, granting a motion for judgment on the pleadings on the ground of *res judicata.*[1]

The facts and procedural history of this case are set forth as follows. Prior to July 28, 1969, the appellant, Daniel B. Brandschain, and one Robin Tiesler,[2] had purchased some

---

1. This Order was not entered in a separate document as required by Pa.R.A.P., Rule 301(b), 42 Pa.C.S.A. However, it is evident that the opinion of the court below was intended to represent the final decision in this case and the docket refers to this decision as an order. Moreover, the appellee did not object to the taking of the appeal in absence of a separate judgment. Under these circumstances, the parties are deemed to have waived this procedural requirement. See Pa.R.A.P., Rule 301, Note.; *Bankers Trust Co., v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

2. Robin Tiesler is not a party to this appeal.

four hundred eighty-three (483) acres of land in Wyoming County, Pennsylvania and formed a company called The Miller Mountain Development Company (hereinafter "Company"). Thereafter, appellant, Tiesler, and appellee, Fred Lieberman, entered into an agreement whereby the acreage of the Company would be transferred to a corporation known as The Miller Mountain Corporation (hereinafter, "Corporation") of which appellee would own seventy-five per cent (75%) of the equity stock and fifty per cent (50%) of the voting stock. A Shareholders Agreement encompassing these and other provisions was entered into on July 28, 1969.

Pursuant to this Agreement, appellee advanced the sum of $452,624.00 to the Corporation for the acquisition of land, engineering fees, economic surveys and the like. Subsequent to the advancement of these funds, appellee requested that the shareholders elect to qualify the Corporation as a sub-chapter "S" Corporation so that he, appellee, could deduct his advances as losses on his personal income tax return. The parties agreed to this and appellant, as Vice President of the Corporation, signed thirty-eight demand notes to the Order of appellee. On December 6, 1972, the appellee instituted an action in assumpsit against the Corporation seeking to recover on the demand notes and sought a judgment against the Corporation for the sum of $452,-625.00, the amount of his advances. Appellant and Tiesler intervened in the action and filed an Answer, New Matter and Counterclaim alleging that appellee obtained the notes through fraud and deceit and that the notes were merely evidence of debt without independent legal significance. The appellant also alleged that the appellee breeched the terms of the July 28, 1969 agreement which set forth that appellee would provide the Corporation with 2.5 million dollars for land acquisition and would make available to the Corporation his credit line at Fidelity Bank of eight (8) million dollars. Appellant and Tiesler also claimed that appellee had denied them access to the Corporation books and records and that appellee sought to gain control of the

Corporation by threatening that he would not provide the Corporation with funds to pursue its business affairs unless he was granted control.

The assumpsit action proceeded to trial before the Honorable William W. Vogel and a jury. Upon an agreement signed by counsel for the parties and by the court, the jury was directed to return a verdict in favor of the appellee for the sum of $724,457.90. After a correction in the computation of interest, the verdict was molded and reduced to $632,843.84 by Order of the court dated March 21, 1978. Judgment was entered on the same day. However, there was no agreement for verdict on the appellant's counterclaim and no jury verdict was rendered thereon.

Contemporaneous with the directed verdict, the court recited the stipulation of counsel that the appellee would not take further action on the judgment for a period of sixty (60) days during which appellant and Tiesler would be allowed to institute an action in equity based on their counterclaim. Judge Vogel believed that the only way that the equitable rights of the parties could be properly addressed and resolved was pursuant to the equity action.[3] This stipulation was incorporated into a consent order dated March 21, 1978.

On May 12, 1978, the Complaint in Equity was filed. Appellee filed preliminary objections raising, *inter alia*, the defense of *res judicata* alleging that a verdict had been rendered in this matter and therefore appellant and Tiesler could not relitigate it. This preliminary objection was denied by Judge Vogel. Appellee subsequently filed an answer to the complaint raising again the defense of *res judicata*. Appellee then filed a motion for judgment on the pleadings which was argued before an *en banc* panel consisting of the Honorable Vincent A. Cirillo,[4] the Honorable Richard S. Lowe as well as the Honorable William W. Vogel. Judge Cirillo, writing for the majority, granted the

3. The Honorable William W. Vogel, dissenting opinion, p. 6.

4. The Honorable Vincent A. Cirillo is now serving on the Superior Court of Pennsylvania.

motion for judgment on the pleadings based on *res judicata.* Judge Vogel filed a dissenting opinion stating that he would deny the motion.

The appellant contends primarily that the complaint in equity should not have been barred by the doctrine of *res judicata* since the more controlling issues raised therein were not litigated or resolved in the prior assumpsit action. The appellant also argues that the appellee should not have been permitted to raise the *res judicata* defense in his motion for judgment on the pleadings since that defense had already been briefed, argued and denied in his preliminary objections. Appellee argues that *res judicata* applies as a result of the agreement of the parties to the directed verdict and the subsequent consent order.

With regard to appellant's first argument, the doctrine of *res judicata* will apply where the cause of action in one suit is identical with that involved in a prior judgment. *Lebeau v. Lebeau,* 258 Pa.Super. 519, 393 A.2d 480 (1978). "Thus a final judgment rendered by a court of competent jurisdiction on the merits is conclusive of the rights of the parties and their privies and constitutes a bar to a subsequent claim, demand or cause of action and issues determined therein." *Id.,* 258 Pa.Superior Ct. at 525, 393 A.2d at 482, citing *Jenkins v. Jenkins,* 246 Pa.Super. 455, 371 A.2d 925 (1977). To support a claim of *res judicata,* four conditions must be established: (1) the identity of the cause of action; (2) the identity of the persons or parties to the action; (3) the identity of the quality or capacity of the parties sued or being sued; and (4) the identity of the thing sued upon. *Id., Thompson v. Karastan Rug Mills,* 228 Pa.Super. 260, 323 A.2d 341 (1974). Once it has been established that the concurrence of these four identities exist, it must be determined whether the ultimate and controlling issues have been decided in the prior proceeding. *Id.*

A consent order, such as the one issued here, is not a legal determination of the matters in controversy. *Univer-*

*sal Builders Supply, Inc. v. Shaler Highlands Corpora-tion,* 405 Pa. 259, 175 A.2d 58 (1961). However, it does have a *res judicata* effect, binding the parties with the same force as a full hearing on the merits. *Pennsylvania Human Relations Commission v. Ammon K. Graybill, Jr., Inc., Real Estate,* 482 Pa. 143, 393 A.2d 420 (1978). A consent decree will be held to be a final adjudication on the merits binding the parties as *res judicata* if it appears from the record that the parties intended to be so bound. *Keystone Building Supply Corp. v. Lincoln Savings and Loan Association,* 468 Pa. 85, 360 A.2d 191 (1976).

In the instant case, we note, initially, that the causes of action of both proceedings are not identical. The prior action was in assumpsit; the subsequent action, in equity. Moreover, while the parties to both actions are identical, each party is operating in different capacities—in the assumpsit action, the appellant was an intervenor-defendant and the appellee was the plaintiff; in the equity action the appellant is the plaintiff while the appellee is the defendant. More important, however, is the fact that not all of the issues raised in the appellant's equity action are identical to those encompassed by the agreement, consent order and final judgment in the assumpsit action.

At the time the parties agreed to the directed verdict, the appellant conceded that the demand notes sued upon were legally valid and binding and that a certain amount of money was owed to the appellee. In exchange for this concession, appellee agreed that no action would be taken on the demand notes until appellant's equity action was filed and resolved.[5] It was also agreed that certain issues regarding interest computation on the debt, interpretation of the Shareholders Agreement of July 28, 1969 and the times and names of execution on the judgment would be reserved for the equity action.[6]

5. Notes of Testimony (hereinafter, N.T.) February 22, 1978, pp. 12–13, 16.

6. N.T. February 22, 1978, pp. 15–16.

In his Complaint in Equity, the appellant does challenge the validity and legal significance of the demand notes. He alleges that these notes were obtained by appellee through fraud and deceit and therefore appellee should be permanently precluded from executing on the judgment. We disagree with the appellant insofar as this particular issue was resolved by the agreement in the prior action and because a consent order and final judgment were entered thereon, the appellant is barred from relitigating it in his equity action.[7] The appellant argues, however, that his complaint raises other, more controlling issues that were not disposed of in the assumpsit action and, therefore, are not *res judicata.* We agree.

Essentially, the appellant alleges in his complaint that appellee embarked on a scheme to seize control of the Corporation and divest the plaintiff of any interest in the same. It is alleged that appellee has done this by putting the Corporation in a financially embarrassing predicament and then refusing to advance funds to the Corporation in violation of paragraph 7 of the Shareholders Agreement.[8] With regard to these claims, appellant generally seeks (1) a court order appointing a receiver to conduct the business of the Corporation for the benefit of the shareholders; and (2) an order directing appellee to advance funds to the Corporation as needed to go forward with the development of the Corporation pursuant to the Shareholders Agreement. The appellant also requests an order restraining any payment of funds to appellee until the Corporation has enough funds that are not used for other purposes and until the Corpora-

7. We note that while appellant attempted to relitigate the issue of the legal validity of the demand notes in his equity action, on appeal, he acknowledges that such notes are valid and that a certain amount of money, as agreed, is owed to the appellee.

8. The pertinent portion of the Shareholders Agreement provides as follows:

"... Investor further agrees that he will provide the Corporation with whatever funds are necessary to pay any written contractual and tax obligations which have been incurred by the corporation with his written consent..."

tion has exhausted the possibilities of development, sale or acquisition of capital from other investors. Other claims include the allegation that appellee has refused to allow the appellant to inspect the Corporation's various books and records.

The appellee argues, and the court below determined, that these issues are *res judicata* as they constitute an attempt to modify the final judgment in the prior assumpsit action. Our review of the record discloses, however, that the only issue disposed of in the prior action was that of the validity and legal significance of the demand notes. The issues in question are either entirely unrelated to the demand notes or are among those which, by agreement, were reserved for the equity action. Because these issues were not litigated or resolved by agreement in the prior action and because no final judgment was entered on their merits, we hold that the doctrine of *res judicata* is inapplicable. To hold otherwise would be to deny the appellant his day in court.

The order of the court below granting the motion for judgment on the pleadings is affirmed to the extent that the appellant is precluded from challenging the validity and legal significance of the demand notes in his equity action. With regard to all other issues raised in the appellant's equity action, the order granting the motion for judgment on the pleadings is reversed and this case is remanded for proceedings consistent with this opinion.[9] Jurisdiction is not retained.

CERCONE, J., concurs in the result.

**9.** In light of this decision, we need not consider the merits of appellant's argument that the appellee should be precluded from arguing the defense of *res judicata* in the motion for judgment on the pleadings.