627 A.2d 1193

**COMMONWEALTH of Pennsylvania**

v.

**Richard FLOOD, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 5, 1993.

Filed July 8, 1993.

558

Samuel C. Stretton, West Chester, for appellant.

Marilyn F. Murray, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, BECK and KELLY, JJ.

KELLY, Judge.

Appellant, Richard Flood, appeals from the judgment of sentence reinstated on January 10, 1991 following the trial court's denial of his motion to withdraw his December 7, 1990 guilty plea to first degree murder[1] and possession of an instrument of crime.[2] Appellant contends that the trial court erred in denying his motion to withdraw his plea. We hold that appellant's contention is without merit and, therefore, affirm.

The relevant facts and procedural history may be summarized as follows. Appellant was charged with first degree murder and possession of an instrument of crime in connection with the shooting death of sixteen-year-old Jose Perez which occurred on the evening of March 15, 1989. Prior to the shooting, a group of about ten males crossed the street and one of them poured beer on the car of Luis Centrone as he was driving at 9th and Lycoming Streets in Philadelphia, Pennsylvania, on his way to visit a friend in the area. Centrone remained in his car and drove on to Delhi Street, where he told a friend about the incident. They obtained baseball bats and recruited friends to return with them to comb the area, looking for the person who poured the beer. As they were leaving the area of the incident in two cars, Jose Perez followed them into the area of 9th and Pike Streets driving an

---

1.  18 Pa.C.S.A. § 2502.
2.  18 Pa.C.S.A. § 907.

all-terrain vehicle. Centrone and his friends heard gunshots and kept going without realizing that Perez had been shot. Later, Centrone and his friends discovered bullet holes in both of their cars.

Police found Perez at Delhi and Pike Streets at about 7:30 p.m. with a bullet hole in his lower back. Perez died at Temple University Hospital at 2:10 a.m., March 16, 1989, of a gunshot wound which severed a major artery.

Two members of the local town watch heard the shots and observed two men running, then stopping, then pushing something into their pockets. One of the men wore a distinctive red and black jacket. The police were informed of these observations. Shortly after arriving in the area, police saw appellant, emerging from an alley, wearing a distinctive red and black jacket, with what appeared to be a gun in his hand. Upon further police investigation, appellant was discovered kneeling between two parked cars, sweating and wearing a distinctive jacket which matched the description given police by the town watch members. A pat down revealed no weapon. Appellant denied coming from the alley. At a point very close [3] to where appellant was apprehended, the police discovered a gun which later proved to be the weapon used to kill Perez. The two town watch members identified appellant's jacket as identical to the jacket worn by the person they had witnessed running from the scene of the shooting.

The matter was tried before a death qualified jury, as the Commonwealth was seeking the death penalty. The trial extended from November 30, 1990 to December 6, 1990. Appellant testified on his own behalf that he had been playing basketball earlier in the evening of the fatal shooting and was coming from a friend's house located at 9th and Pike Streets. According to his testimony, appellant claimed that he was on his way home when he heard gunfire and saw someone running out of an alley, whereupon appellant went into the

---

3. The accounts vary. The trial court places the gun two feet from the spot where appellant was found kneeling. The Commonwealth places the gun six inches to the right of appellant's location. The weapon was discovered under one of the parked cars.

alley and picked up a discarded gun which he intended to sell because he was unemployed. When appellant saw the police, he dropped the gun, according to his testimony, because he was on bail in another criminal matter.

At the conclusion of defense counsel's closing argument, the Commonwealth moved to reopen the trial because the prosecution had acquired additional information which would rebut appellant's alibi. The Commonwealth offered a facsimile of a statement obtained by military personnel from Gregory A. Brunson, Jr. In his affidavit, Brunson stated that he had purchased a gun for appellant at appellant's behest. Brunson and appellant are cousins. The purchased gun was the weapon that killed Jose Perez.

Appellant and defense counsel then met to discuss the potential impact of this new evidence and the terms of a plea bargain as well. The Commonwealth agreed to refrain from seeking the death penalty if appellant would plead guilty to the charges. On December 7, 1990, appellant entered a guilty plea and submitted to written and oral colloquies after which the trial court accepted his plea and immediately sentenced appellant to life imprisonment for the murder charge plus a concurrent one to two years for the possession of an instrument of crime charge.

On December 12, 1990, appellant moved to withdraw his negotiated guilty plea at which point the trial court vacated the sentence pending disposition of appellant's petition. On January 10, 1990, appellant petitioned the court for appointment of new counsel. Following a hearing on that date, the trial court denied appellant's motion to withdraw his plea and re-imposed sentence. The trial court permitted trial counsel to withdraw representation. New counsel was appointed for the purposes of this timely appeal.

Appellant raises the following issues for our review:

1. DID THE HONORABLE JOHN J. POSERINA, JR. ERR IN OPENING THE TRIAL RECORD AFTER THE CLOSING SPEECH OF TRIAL COUNSEL ON THE BASIS OF ALLOWING THE PROSECUTION

TO PRESENT ADDITIONAL EVIDENCE AND WAS TRIAL COUNSEL INEFFECTIVE FOR NOT POINTING OUT THE ADDITIONAL EVIDENCE WAS CONTAINED IN A STATEMENT, DATED NOVEMBER 6, 1990, WHICH SHOULD HAVE BEEN KNOWN WELL IN ADVANCE OF THE TRIAL AND FOR NOT INVESTIGATING THE ACCURACY OF THE CONTENTS AND WAS MR. FLOOD'S SUBSEQUENT PLEA THE RESULT OF COERCION AND NOT VOLUNTARILY ENTERED?

2. DID THE HONORABLE JOHN J. POSERINA, JR. ERR IN NOT ALLOWING MR. FLOOD TO WITHDRAW HIS GUILTY PLEA AND HAVE INDEPENDENT COUNSEL AT THE HEARING, SINCE HIS TRIAL COUNSEL WAS INEFFECTIVE FOR NOT NOTING THE NEW EVIDENCE HAD A DATE PRIOR TO TRIAL, FOR NOT INVESTIGATING THE NEW EVIDENCE, AND FOR COUNSELING MR. FLOOD TO ENTER HIS PLEA WITHOUT PROPER INVESTIGATION?

3. DOES THIS COURT LACK JURISDICTION SINCE THE HONORABLE JOHN P. POSERINA, JR. FAILED TO RESENTENCE MR. FLOOD?

Appellant's Brief at 3.

As a threshold matter, appellant questions this Court's jurisdiction to hear his appeal because, according to appellant, the trial court failed to resentence him after denying his motion to withdraw his guilty plea. We disagree.

Rule 301 of the Pennsylvania Rules of Appellate Procedure states that no order of a court shall be appealable until it is entered upon the appropriate docket and set forth on a separate document. Pa.R.App.P. 301(a), (b). The separate document requirement, however, is a waivable defect where the trial court clearly intends its opinion to represent the court's final decision in the case and the appellee does not object to the taking of the appeal in the absence of a separate judgment. *Mitchum v. Atlantic Richfield Co.*, 364 Pa.Super.

583, 586, 528 A.2d 662, 663 (1987); *Brandschain v. Lieberman,* 320 Pa.Super. 10, 11 n. 1, 466 A.2d 1035, 1036 n. 1 (1983); *Parents Against Abuse In Schools v. The Williamsport Area School District,* 140 Pa.Cmwlth. 559, 567, 594 A.2d 796, 800 (1991).

Instantly, there are docket entries verifying the reimposition of appellant's sentence. Moreover, the charge sheets accompanying the January 10, 1991 proceeding, which are included in the quarter sessions file, state that the sentences imposed on December 7, 1990 and vacated on December 12, 1990 were reimposed by the court. Additionally, the trial court opinion emphasizes the reimposition of sentence as its final decision in the case. Trial Court Opinion at 5. Thus, appellant's jurisdiction argument is wholly without merit.[4]

■ Appellant asserts that the trial court erred in denying his petition to withdraw his guilty plea after sentencing. Appellant contends that his guilty plea was involuntary due to trial court error and the ineffectiveness of his trial counsel. Specifically, appellant alleges that the trial court erred in allowing the prosecution to reopen its case to offer rebuttal testimony in the form of an incriminating affidavit submitted by appellant's cousin. Moreover, appellant proffers that his trial counsel was ineffective for failing to object to the admissibility of the affidavit and failing to request a continuance to investigate the accuracy of this new evidence. Accordingly, appellant concludes, his guilty plea was involuntarily induced and the trial court should have permitted him to withdraw it. We disagree.

■ In general, a guilty plea is a waiver of treasured rights, and to be valid, the plea must be knowing, intelligent and voluntary. Pa.R.Crim.P. 319; *Commonwealth v. Sauter,*

**4.** Appellant's challenge to this Court's jurisdiction is rooted solely in the allegation that the January 10, 1991 notes of testimony do not reflect sentence reimposition. Appellant cites no statute, rule, or case law in support of his proposition that the determination of whether Rule 301 requirements are met is limited to examination of the notes of testimony.

389 Pa.Super. 484, 567 A.2d 707 (1989), *appeal denied*, 525 Pa. 598, 575 A.2d 564 (1990). Moreover,

> Pursuant to Pa.R.Crim.P. 319(a), a trial judge "shall not accept [a guilty plea] unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record."

Regarding the entry of a guilty plea, it has been said:

> Pennsylvania has constructed its guilty plea procedures in a way designed to guarantee assurance that guilty pleas are voluntarily and understandingly tendered. *See:* Pa. R.Crim.P. 319 and comment thereon. The entry of a guilty plea is a protracted and comprehensive proceeding wherein the court is obliged to make a specific determination after extensive colloquy on the record that a plea is voluntarily and understandingly tendered. A guilty plea colloquy must include inquiry as to whether (1) the defendant understood the nature of the charge to which he is pleading guilty; (2) there is a factual basis for the plea; (3) the defendant understands that he has the right to a jury trial; (4) the defendant understands that he is presumed innocent until he is found guilty; (5) the defendant is aware as to the permissible range of sentences; and (6) the defendant is aware that the judge is not bound by the terms of any plea agreement unless he accepts such agreements. *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977). Inquiry into these six areas is mandatory in every guilty plea colloquy. *Commonwealth v. Glaze*, 366 Pa.Super. 517, 531 A.2d 796 (1987); *Commonwealth v. Moore*, 365 Pa.Super. 65, 528 A.2d 1364 (1987). *See also: Commonwealth v. Johnson*, 355 Pa.Super. 123, 512 A.2d 1242 (1986).

*Commonwealth v. McClendon*, 403 Pa.Super. 467, 469–71, 589 A.2d 706, 707–08 (1991) (*en banc* ), *appeal denied*, 528 Pa. 622, 597 A.2d 1151 (1991) (citing *Commonwealth v. Cole*, 387 Pa.Super. 328, 335–36, 564 A.2d 203, 206–07 (1989) (*en banc* )). The importance of the guilty plea colloquy is to provide a recorded demonstration that the plea was a voluntary and intelligent action entered with full awareness of its ramifica-

tions. *Commonwealth v. Iseley,* 419 Pa.Super. 364, 377, 615 A.2d 408, 415 (1992) (citing *Commonwealth v. Ingram,* 455 Pa. 198, 200, 316 A.2d 77, 78 (1974)).  While the Rule 319 checklist is a necessary part of the determination of the validity of a guilty plea, a full analysis must be based on the totality of the circumstances surrounding the plea.  *Commonwealth v. Iseley, supra* 419 Pa.Super. at 377, 615 A.2d at 415 (citing *Commonwealth v. Owens,* 321 Pa.Super. 122, 131, 467 A.2d 1159, 1163 (1983)).

█  Instantly, the notes of testimony relating to the entry of appellant's guilty plea reflect that the trial court made all of the appropriate inquiries pursuant to Pa.R.Crim.P. 319. Throughout the oral colloquy, appellant affirmed his knowledge and understanding of the charges against him, the factual basis thereof, his right to a jury trial, the presumption of innocence, and the possible sentence.  Moreover, appellant twice affirmed the voluntariness of his plea.  In addition, appellant tendered a written plea, duly signed by all the necessary parties, which was incorporated into the record. Appellant positively acknowledged his understanding that he was waiving all trial rights and defects, thereby limiting his grounds for appeal.  Accordingly, the guilty plea colloquies reveal no irregularities, as they are in compliance with Pa. R.Crim.P. 319.  Appellant's guilty plea, therefore, is facially sound.

█  After an accused enters a guilty plea, appellate rights are limited to challenges to the validity of the plea, the legality of the sentence imposed, or the trial court's jurisdiction.  *Commonwealth v. Harvey,* 407 Pa.Super. 545, 548, 595 A.2d 1280, 1282 (1991), *appeal denied,* 530 Pa. 652, 608 A.2d 28 (1991); *Commonwealth v. Moore,* 365 Pa.Super. 65, 69, 528 A.2d 1364, 1366 (1987); *Commonwealth v. Owens, supra.* Although there is no absolute right to withdraw a guilty plea, withdrawal requests made prior to sentencing should be liberally granted.  *Commonwealth v. Turiano,* 411 Pa.Super. 391, 406, 601 A.2d 846, 854 (1992), *appeal denied,* 531 Pa. 654, 613 A.2d 559 (1992); *Commonwealth v. Harvey, supra.* After sentencing, however, the accused must demonstrate prejudice

that results in manifest injustice in order to withdraw a guilty plea. *Commonwealth v. Vance,* 376 Pa.Super. 493, 499, 546 A.2d 632, 635 (1988), *appeal denied,* 521 Pa. 620, 557 A.2d 723 (1989). Proving manifest injustice requires the accused to show that the guilty plea was invalid, *i.e.,* involuntary or unknowing. *Commonwealth v. Martin,* 416 Pa.Super. 507, 611 A.2d 731 (1992); *Commonwealth v. Harris,* 403 Pa.Super. 435, 589 A.2d 264 (1991).

Because "a plea of guilty effectively waives all non-jurisdictional defects and defenses," *Commonwealth v. Gibson,* 385 Pa.Super. 571, 561 A.2d 1240 (1989), *appeal denied,* 525 Pa. 642, 581 A.2d 568 (1990), after sentencing, allegations of ineffectiveness of counsel in this context provide a basis for withdrawal of the plea only where there is a causal nexus between counsel's ineffectiveness, if any, and an unknowing or involuntary plea. *Commonwealth v. Turiano, supra; Commonwealth v. Vance, supra.* The guilty plea hearing becomes *the* significant procedure under scrutiny. *Commonwealth v. Turiano, supra.* The focus of the inquiry is whether the accused was misled or misinformed and acted under that misguided influence when entering the guilty plea. *Commonwealth v. Broadwater,* 330 Pa.Super. 234, 243, 479 A.2d 526, 531 (1984).

Here, appellant challenges his guilty plea by raising claims of error and counsel's ineffectiveness *at trial,* not at the guilty plea proceeding. In the context of attacking the voluntariness of his guilty plea, appellant attempts to raise alleged trial defects which he waived by the very act of entering his plea. Appellant submits, however, that, but for these trial defects, he would not have pled guilty.

Under the unusual circumstances of this case, appellant had the benefit of a full jury trial wherein the Commonwealth was seeking the death penalty. The trial proceedings ceased when appellant negotiated and entered his guilty plea. As a result of his guilty plea, appellant received the benefit of his bargain, a life sentence. The facts adduced at trial were summarized and fully incorporated by reference at the guilty plea hearing,

568

along with the additional evidence of the affidavit given by appellant's cousin. Appellant affirmed this factual basis, never contesting the truth of the affidavit until he petitioned to withdraw the guilty plea. At the January 10, 1991 proceeding, appellant raised a question concerning a discrepancy in the dates on the affidavit.

The affidavit in question (exhibit B) is a one page document. At the top of the page appears the facsimile transmission date of December 6, 1990. In the upper right corner, in the affiant's handwriting, is the date of November 6, 1990. At the bottom of the document, the notary's certification is dated December 6, 1990. Appellant argues that trial counsel was ineffective for failing to note the "November 6, 1990" date, to object to the admissibility of the document as a discovery rule violation, and to request a continuance for the purpose of further investigation. The Commonwealth maintains, however, that the "November 6, 1990" date is error and that the two "December 6, 1990" dates control. Because the affidavit constituted newly discovered evidence, it is the Commonwealth's position that the trial court did not err in allowing the Commonwealth to reopen its case to rebut appellant's testimony. Appellant submits no evidence of unlawful coercion other than these alleged trial defects which, we hold, he waived by entering a guilty plea.[5] Assuming, for the sake of argument,

5. At his guilty plea hearing on December 7, 1990, the trial court addressed the extent of appellant's waiver of alleged trial defects thusly:

THE COURT: Do you understand that by signing a guilty plea colloquy form and asking you to accept it as your plea and voluntary wish that you are thereby giving up all of your trial rights? Do you understand that?

THE WITNESS: Yes.

THE COURT: Finally, not really finally, but next to last, if you appealed a verdict by a jury or a verdict by a Judge, you could raise all issues that have been preserved throughout the trial. Whereas when you enter a guilty plea, you still have a right to appeal, but it is only possible to appeal on three grounds and only those three. I will explain them to you.

Ground number one is whether or not this Court has jurisdiction, that is do I have the right or power to hear this case. Since it occurred in Philadelphia, since I am a duly elected Judge in Philadelphia, I can assure you I do have the power to hear that case.

that these issues have been properly preserved, we hold that appellant's underlying claims must necessarily fail.

■ The rights and duties of the parties in pretrial discovery in criminal cases are governed by Pa.R.Crim.P. 305.[6]

> The second ground of appeal would be whether or not the sentence I give you is a legal sentence. Again, I can assure you that there is only two possible sentences to disagree, it is life or death.
>
> And third, whether or not your plea is entered voluntarily or somebody forced you to do it.
>
> Now, I am asking you, are you voluntarily entering this plea?
>
> THE WITNESS: Yes, I am.
>
> N.T. December 7, 1990 at 7–8.

**6. Rule 305. PRETRIAL DISCOVERY AND INSPECTION**

**A. Informal.** Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion to the court. Such motion shall be made within fourteen (14) days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

**B. Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or

Pursuant to this rule, the Commonwealth must comply with certain mandatory disclosure requirements. The prosecution does not violate discovery rules, however, where it does not provide the defense with evidence it does not possess and of which it is unaware during pretrial discovery. *Commonwealth v. Chew,* 338 Pa.Super. 472, 483, 487 A.2d 1379, 1385 (1985).

It is, moreover, within the trial court's discretion to allow either side to reopen a case, prior to judgment, in order to prevent a failure or miscarriage of justice. *Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557 (1990); *Commonwealth v. Ridgely,* 243 Pa.Super. 397, 365 A.2d 1283 (1976). The admission or rejection of rebuttal evidence is within the trial court's discretion as well. *Commonwealth v. Feflie,* 398 Pa.Super. 622, 581 A.2d 636 (1990), *appeal denied,* 528 Pa. 621, 597 A.2d 1151 (1991), *citing Commonwealth v. Mathis,* 317 Pa.Super. 362, 464 A.2d 362 (1983).

In reviewing challenges to counsel's stewardship, counsel is presumed effective, and appellant bears the burden of proving his claim of ineffectiveness. *Commonwealth v. McNeil* 506 Pa. 607, 487 A.2d 802 (1985). To prevail on an ineffectiveness claim, appellant must demonstrate that his claim is of arguable merit, that counsel's chosen course had no

mental examinations of the defendant, which are within the possession or control of the attorney for the Commonwealth;
(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence;
(g) the transcripts and recording of any electronic surveillance, and the authority by which the said transcripts and recording were obtained.

\* \* \* \* \* \*

**D. Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material or witness.
**E. Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defen-

reasonable basis designed to effectuate appellant's interests, and that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. *Commonwealth v. Pierce* 515 Pa. 153, 157–60, 527 A.2d 973, 975–76 (1987); *Commonwealth v. Neal,* 421 Pa.Super. 478, 482, 618 A.2d 438, 440 (1992). Finally, whether counsel's investigative decisions are reasonable depends critically on the information supplied by the accused. *Commonwealth v. Peterkin,* 511 Pa. 299, 319, 513 A.2d 373, 383 (1986), *citing Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695–96 (1984), *reh. denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

■ On the record of this case, there is an absence of such manifest injustice which would require that the appellant be permitted to withdraw his guilty plea. The prosecution maintains that it was unable to present the affidavit at issue sooner than December 6, 1990 because that is the date on which it was first received from the military personnel where appellant's cousin was stationed. The content of the affidavit was necessary to rebut appellant's testimony that he found the gun and was going to sell it because he was unemployed. The trial court was persuaded that the "November 6, 1990" date was an error, in view of the transmission date and the notary's subscription date which were both "December 6, 1990." We conclude, therefore, that the trial court did not abuse its discretion in allowing the prosecution to reopen its case to submit this offer of proof in rebuttal.[7]

dant, or it may enter such other order as it deems just under the circumstances.

      ✻     ✻     ✻     ✻     ✻     ✻

7. Appellant's reliance on *Commonwealth v. Thiel,* 323 Pa.Super. 92, 470 A.2d 145 (1983) is misplaced. In *Thiel,* this Court held that the mandatory requirements of Pa.R.Crim.P. 305 were violated where the Commonwealth deliberately withheld inculpatory evidence of a tangible nature in the form of airline ticket stubs. The Commonwealth argued that the ticket stubs were not material to the case until Thiel took the stand. The court reasoned that, although there may be cases where the materiality of certain evidence *in the Commonwealth's possession* might not become apparent until after trial has begun, the prosecution must be held to a reasonable anticipation of what evidence *in its possession*

Additionally, the truth of the affidavit was presumably known to appellant. Counsel was not ineffective for failing to investigate the accuracy of the statement which appellant already knew was either true or false. Appellant does not assert that trial counsel knew appellant challenged the truth of his cousin's statement, that counsel advised appellant that any challenge would be useless, or that there was a reasonable probability that the result would have been different but for the alleged ineffectiveness. Also, there is nothing of record to show that the trial court admitted this new evidence at trial, or that the jury ever heard the statement prior to appellant's entry of a guilty plea.[8] On the contrary,

might be material in rebuttal. Requiring the disclosure of such tangible evidence, the court stated, best serves the purpose of Rule 305. *See* Pa.R.Crim.P. 305 Comment Sec. 1.2: Scope of Discovery ("In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with the protection of persons, effective law enforcement, the adversary system, and national security.").

Because of the date discrepancy on the affidavit in the case at bar, appellant argues, the Commonwealth must have had this information prior to December 6, 1990, thereby suggesting a discovery rule violation. At the very least, appellant submits, his counsel was ineffective for failing to seek a continuance to investigate whether the Commonwealth actually had possession of the information at an earlier time. The trial court, however, was convinced that the Commonwealth had not deliberately withheld the information and considered the affidavit as newly discovered. We will not second-guess trial counsel's tactic where it has a reasonable basis, particularly when counsel's investigative decisions depend upon information supplied by the appellant.

8. The contents of the note were read into the record at the guilty plea hearing as follows:

That Gregory Albert Brunson, B–R–U–N–S–O–N, Senior, who is presently in the United States Navy in Newport, Rhode Island—if Mr. Brunson were called he would state that he's the cousin of the defendant and that in February of '88, the defendant came to him while, he, Mr. Brunson, was in Philadelphia visiting his—Mr. Brunson's family.

The defendant told Mr. Brunson about a problem that existed between blacks and Puerto Ricans in his neighborhood, and that he had—he feared for the welfare of his family. The defendant asked Mr. Brunson to get him a gun. Mr. Brunson went back to the Naval Air Station in Brunswick, where he had been assigned. While he was up there, he received several phone calls following his return to NAS

when confronted with the new information, appellant chose to enter a guilty plea rather than attack the statement or allow the jury to hear it and risk the death penalty. Counsel cannot be deemed ineffective for advising the tactical decision to avoid a possible death penalty through a plea bargain. Such advice had a reasonable basis designed to effectuate appellant's interests and does not invalidate a subsequent guilty plea. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (holding that a plea of guilty which would not have been entered except for defendant's desire to eliminate the possibility of a death penalty and to limit the maximum penalty to life imprisonment ... was not for that reason compelled ... for the purpose of determining the validity of a guilty plea). Under the circumstances of this case, the plea was to appellant's advantage. Thus, counsel was not ineffective for advising in favor of the plea, absent some signal from appellant that the statement was false.[9] We conclude, therefore, that appellant's underlying claims of coercion or inducement, even if preserved, must necessarily fail.

In appellant's final argument, he contends that he was entitled to new counsel at the hearing on his petition to withdraw his plea of guilty. The bases of this entitlement are

> Brunswick from the defendant. The defendant told him that a man had come to their house with a gun and threatened everyone in the house. The defendant also told his cousin that he feared that his house would be firebombed. He feared for the welfare of his girlfriend and children. After hearing this, Mr. Brunson decided to buy a gun for the defendant as the defendant had requested. He purchased the gun which has been marked as C–11 for identification from the Brunswick Gun Shop, 31 Bath, B–A–T–H, Road in Brunswick, Maine. After purchasing the weapon, Mr. Brunson went to Philadelphia, within a couple of weeks of the purchase and gave the gun to the defendant.
> Your Honor, that is the one piece of evidence I would request to add or to include along with all that has been incorporated.
> C–11 was the murder weapon found nearby when police apprehended appellant.

9. Appellant contends that, upon subsequent investigation, his cousin maintained the truth of the affidavit for more than a year. For the purpose of his appeal, appellant later offered a second affidavit executed by his cousin recanting his statement of "December 6, 1990." *See* Exhibit C and attached affidavit.

the same allegations of coercion or inducement raised in his second argument. Due to our independent analysis of appellant's underlying claims, we conclude that appellant was not entitled to have independent counsel appointed to explore these issues at the withdrawal hearing.

Citing no rule of law in support of his contention, appellant relies instead on *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980) wherein a majority of our Supreme Court held that the trial court erred in dismissing a second Post Conviction Hearing Act petition without a hearing and without the appointment of new counsel. In *Watlington*, petitioner raised claims of ineffective assistance of all prior counsel in his *pro se* petition for relief. The context of the *Watlington* holding, however, is significantly different from the case at bar.

The issue in *Watlington* was whether petitioner's claim of ineffective assistance of counsel had been waived for failure to raise it at the earliest stage in the proceedings at which counsel, whose effectiveness was being challenged, no longer represented the petitioner. The Court vacated the order denying petitioner relief, remanding the matter to the trial court with instructions to appoint counsel to represent the petitioner in the filing of an amended P.C.H.A. petition and any further proceedings thereon.

In the instant case, appellant entered his guilty plea following a full consideration of his options. Only after sentencing, where he received the benefit of his bargain, did appellant choose to raise his claims of *trial* error in an attempt to invalidate the plea. Waiver of any trial error resulted from the entry of the guilty plea which we have determined was knowing and voluntary. Nevertheless, the trial court held a hearing on appellant's post-sentence request to withdraw his plea and appointed new counsel for this direct appeal. Appellant raised his ineffectiveness claims at the hearing, and we have addressed the merits of these claims on this appeal. Thus, appellant has had the benefit of a full review of his claims. Therefore, we will not remand this matter for another hearing on the same issues.

Based on the totality of the circumstances surrounding appellant's guilty plea, we hold that the trial court did not err in refusing to allow him to withdraw his plea. Appellant has failed to demonstrate any unlawful coercion or inducement which would render his plea invalid. Thus, appellant has not established the manifest injustice which would entitle him to relief. Accordingly, we affirm judgment of sentence.

Judgment of sentence affirmed.

BECK, J., filed a concurring statement.

BECK, Judge, concurring.

I concur in the majority's affirmance, and reach that result using a different analysis. I find the majority's rationale would restrict too narrowly the trial court's inquiry where defendant wishes to withdraw a guilty plea.

Appellant claims that his guilty plea was involuntary. He argues that he relied upon trial counsel's advice to plead guilty based on counsel's judgment that the after-discovered affidavit was admissible. The question is whether it was proper for the trial court to inquire into counsel's pre-plea actions in determining ineffectiveness. I would find such inquiry was proper.

The majority concludes that by pleading guilty appellant has waived any claim that his plea was involuntary based upon trial counsel's advice. The majority instructs the trial court to focus only on the plea colloquy in determining the voluntariness of the plea.

In this case I conclude that the voluntariness of the plea cannot be accomplished by a review of the plea colloquy alone. Rather, an inquiry into counsel's pre-plea actions should be permitted to determine counsel's effectiveness. The principles established in *Commonwealth v. Nelson,* 393 Pa.Super. 611, 574 A.2d 1107, 1110–15 (1990) are applicable to the instant case. In *Nelson,* a PCRA challenge, appellant was entitled to withdraw his guilty plea where counsel was unaware that appellant had a meritorious fifth amendment challenge to his pre-trial inculpatory statement, and where appellant relied upon counsel's advice in entering the plea.

In the instant case, I agree with the majority that post-sentence guilty pleas result in waiver of all questions except for jurisdiction, legality of sentence and voluntariness of the plea. However, I conclude that the advice of counsel which led directly to the plea implicates the voluntariness of the plea. I therefore would permit inquiry into counsel's pre-plea advice.

However, the majority is correct that appellant's challenge must fail. Appellant's claim has no arguable merit. The trial court did not abuse its discretion in reopening the proceeding on the basis of the after-discovered affidavit. Further, counsel had a sound strategic reason in advising appellant to plead guilty. The affidavit was of such probative value that it clearly exposed appellant to the death penalty. *See Commonwealth v. Lewis*, 423 Pa.Super. 94, 620 A.2d 516, 518–19 (Pa.Super.1993).