639 A.2d 810

**COMMONWEALTH of Pennsylvania**

**v.**

**Harvey SHEKERKO, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 1994.

Filed March 28, 1994.

---

David K. Fonner, Somerset, for appellant.

John W. McIlvaine, Asst. Dist. Atty., Washington, for Com., appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Greene County denying appellant Harvey Shekerko's petition for post-conviction relief. We affirm.

Harvey Shekerko lived with his four young children in Waynesburg. He dated Linda Caldwell, who had two children of her own. Ms. Caldwell and her children would frequently spend the night at Shekerko's residence. On the evening of March 20, 1984, Shekerko and Caldwell went to a local tavern, leaving Shekerko's oldest child to watch the other children. Shekerko and Caldwell returned late that evening. As a result of an argument, Shekerko did not sleep in the bedroom with Caldwell that evening.

On March 21, Caldwell's son, age four, was found at the bottom of the basement steps. Shekerko alleged that he found the child at the bottom of the steps and saw that he was bleeding from his mouth. Fearing that he would be blamed for the child's injuries, Shekerko stated that he laid the child back down and returned upstairs to bed. Shekerko denied responsibility for the child's injuries, but admitted that he failed to act at a time when he could have obtained aid for the child.

After Shekerko's son found the child, Shekerko called an ambulance and the police. The victim was pronounced dead at the scene; his body exhibited multiple external injuries of various ages, including lacerations and burns on his buttocks and back, extensive internal injuries to the blood vessels and lungs, and a lacerated liver.

On March 30, 1984, Shekerko was arrested and charged with criminal homicide. He entered a plea of guilty to a charge of third-degree murder. 18 Pa.C.S. § 2502(c). The court sentenced Shekerko to a term of imprisonment of ten to twenty years. Shekerko filed a motion for reconsideration of sentence, which was denied. Shekerko subsequently filed a post-conviction relief petition, which was denied.

On appeal to this court, Shekerko's appellate rights were reinstated *nunc pro tunc*. Attorney Harry Cancelmi was

appointed to represent Shekerko. On July 20, 1987, this court quashed Shekerko's appeal, finding his challenge to the discretionary aspects of sentence waived for failure to raise a substantial question that the sentence imposed was inappropriate under the Sentencing Code. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); Pa.R.A.P. 2119(f).

Two years later, on November 13, 1989, Shekerko filed another petition for post-conviction relief. Attorney Louis Dayich was appointed to represent Shekerko. Shekerko then filed a petition for appointment of new counsel, which was denied. In his petition for post-conviction relief, Shekerko alleged that his plea was not voluntarily and intelligently made since he was not made aware of the permissible range of sentences which the court could impose. Shekerko contended that he was informed that he faced a maximum sentence of ten years.

After a hearing, Shekerko's petition for post-conviction relief was denied. This appeal followed. New counsel, D. Kent Fonner, was appointed to represent Shekerko.

Shekerko raises the following issues for our review:

1. Did the trial court have proper jurisdiction to sentence Shekerko on a charge of third-degree murder based upon an alleged guilty plea colloquy which was so defective as to be unknowing and involuntary?

2. If Shekerko did enter a knowing and voluntary guilty plea based upon the alleged colloquy, is he entitled to a reduction in sentence consistent with the ten year maximum sentence outlined in the alleged plea colloquy?

3. Is Shekerko entitled to a dismissal of the charges against him due to the sentencing court's failure to inquire sua sponte whether Shekerko wished to enter a plea or proceed to trial or, in the alternative, withdraw the alleged guilty plea sua sponte when Shekerko declared his innocence in open court prior to sentencing?

4. Was Shekerko's previous counsel, Louis Dayich, Esq., ineffective in his handling of Shekerko's PCRA petition so

that this case should be remanded to the trial court for a further evidentiary hearing?

Since Shekerko's claims are related, we will discuss them together. Pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*, a petitioner is eligible for collateral relief if he or she pleads and proves by a preponderance of the evidence

(2) [t]hat the conviction or sentence resulted from one or more of the following:

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

42 Pa.C.S. § 9543(a)(2). Because Shekerko entered a guilty plea, the truth-determining process is not implicated. Thus, we confine our review to Shekerko's claim under section 9543(a)(2)(iii), concerning the lawfulness of his guilty plea.

■■■ One who pleads guilty consents to a waiver of treasured rights. *See Commonwealth v. Flood,* 426 Pa.Super. 555, 564, 627 A.2d 1193, 1198 (1993). In order to be valid, a guilty plea must be knowing, intelligent and voluntary. Pa. R.Crim.P. 319; *Commonwealth v. Sauter,* 389 Pa.Super. 484, 567 A.2d 707 (1989), *appeal denied,* 525 Pa. 598, 575 A.2d 564 (1990). A guilty plea colloquy must include an inquiry into whether: (1) the defendant understands the nature of the charge to which he is pleading guilty; (2) there is a factual basis for the plea; (3) the defendant understands that he has the right to a jury trial; (4) the defendant understands that he is presumed innocent until found guilty; (5) the defendant is aware of the permissible range of sentences; and (6) the defendant is aware that the court is not bound by the terms of any plea agreement unless it accepts the agreement. *See Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977).

■■■ The notes of testimony establish that Shekerko was aware that he was charged with criminal homicide, that he was

satisfied in his heart and mind that he was responsible for the child's death, that he was entering a plea for third-degree murder, that he was giving up his right to a jury trial and the presumption of innocence, that the District Attorney was making no recommendation to the sentencing judge as to what the sentence would be, and that a presentence investigation report was ordered. Shekerko was also asked the following questions, to which he answered affirmatively:

> Q: And is it also your understanding that Judge Toothman will order a presentence investigation done to go into your background and family life, and character, and any other points that would be important in making a fair and just sentence for you; and at that point he, along with any evidence you want to present, and after hearing all the evidence, would make a determination of what he believed would be a just and legal sentence in this particular case?
>
> Q: There is no question in your mind, and I can assure you that it will not be a probationary sentence or a Greensburg sentence, although I don't want to speak for the Judge and preclude it; but I think in a situation like this, you should probably expect the worst, just so you understand what is going to happen?

Shekerko also indicated that there had been no threats or promises made to encourage the entry of a guilty plea.

The point in the colloquy to which Shekerko refers in support of his argument that he was unaware of the permissible range of sentence is the following exchange during the colloquy, initiated by one of his attorneys, Mr. Paul Gettleman:

> Q: And after that information was conveyed to you, you had an opportunity to discuss that situation with myself and my wife [Shekerko's other attorney] relative to the way it would affect your life or up to the next 10 years?

Shekerko contends that based upon this statement, he was of the belief that the maximum term of imprisonment to which he was subject was ten years, not twenty years as set forth in the statute. Our review of the transcript of the guilty plea colloquy reveals no statement with respect to the range of permissible sentences for third-degree murder.

■ While the Rule 319 checklist is necessary to determine the validity of a guilty plea, a full analysis requires a consideration of the totality of the circumstances surrounding the entry of the plea. *See Commonwealth v. Flood, supra; Commonwealth v. Iseley,* 419 Pa.Super. 364, 615 A.2d 408 (1992); *Commonwealth v. Owens,* 321 Pa.Super. 122, 467 A.2d 1159 (1983). We find that based on the totality of the circumstances, the plea was knowingly and voluntarily entered. In particular, we point to the fact that attorney Gettlemen spent approximately twenty-five hours with Shekerko prior to entry of the plea, during which time they discussed the different degrees of murder, involuntary and voluntary manslaughter, the concept of malice, life imprisonment, the death penalty, and aggravating and mitigating circumstances. Further, prior to sentencing, attorney Gettlemen stated the following on the record:

> In conclusion, your Honor, I would ask the Court to take a look at the person here, Harvey Shekerko, and in taking all things into consideration, the Court can do justice without necessarily imposing the maximum sentence allowed by law. I think the minimum range is 3 to 20 years. Mr. Shekerko, himself, is very remorseful about what has happened and he even believes punishment is justified, but in this particular situation, we would ask the Court to temper the punishment with some degree of mercy, imposing a sentencing that is fair and just to Greene County and also to Mr. Shekerko.

Sentencing Transcript, March 25, 1985, p. 8.

Additionally, at no time, either before or after sentencing, did Shekerko file a petition to withdraw his guilty plea, nor was this claim raised in his first petition for post-conviction relief or on direct appeal. To avoid these procedural hurdles, Shekerko now raises this claim in the context of counsel's alleged ineffectiveness. Because "a plea of guilty effectively waives all non-jurisdictional defects and defenses," *Commonwealth v. Gibson* 385 Pa.Super. 571, 561 A.2d 1240 (1989), *appeal denied,* 525 Pa. 642, 581 A.2d 568 (1990), "after sentencing, allegations of ineffectiveness of counsel in this context provide a basis for withdrawal of the plea only where there is a causal nexus between counsel's ineffectiveness, if any, and an

unknowing or involuntary plea." *Flood,* 426 Pa.Super. at 567, 627 A.2d at 1199, citing *Commonwealth v. Turiano,* 411 Pa.Super. 391, 601 A.2d 846, *appeal denied,* 531 Pa. 654, 613 A.2d 559 (1992) and *Commonwealth v. Vance,* 376 Pa.Super. 493, 546 A.2d 632 (1988), *appeal denied,* 521 Pa. 620, 557 A.2d 723 (1989).

Our standard of review when evaluating an ineffectiveness claim is well settled. We must first determine whether the underlying issue is of arguable merit. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will be not deemed ineffective for failing to raise a meritless claim. *Id.* If the underlying claim has merit, the appellant must establish that counsel's course of action had no reasonable basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced the client's right to a fair trial. *Id.; Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

We now inquire into the merits of Shekerko's claim and whether Shekerko was "misled or misinformed" or acted under "misguided influence when entering the guilty plea." *Flood,* 426 Pa.Super. at 568, 627 A.2d at 1199. "[W]here a plea bargain has been entered into by an accused represented by counsel, the surrounding circumstances of the plea may sufficiently indicate that the appellant pleaded knowingly and voluntarily even though he was not apprised on the record of the possible range of sentence." *Commonwealth v. Martin,* 258 Pa.Super. 412, 415, 392 A.2d 860, 862 (1978). *See also Commonwealth v. Owens,* 321 Pa.Super. 122, 467 A.2d 1159 (1983). As this court stated in *Martin:*

> [J]ust as a prosecutor uses a negotiated plea to reduce the unpredictability of trial, so an accused uses a negotiated plea to diminish the uncertainty of sentencing. An accused enters into a plea bargain so that he may gain some control over the sentencing process. We may assume, therefore, that if an accused enters a plea agreement and is represented by counsel, then he is aware of the possible range of sentences. Unless there is some indication on the record

that the accused does not understand the nature and effect of the agreement, a negotiated plea is not invalidated merely because the colloquy does not reveal that the accused was informed of the maximum sentence.

*Martin,* 258 Pa.Super. at 415, 392 A.2d at 862 (emphasis added).

A careful review of the record and the circumstances in this case indicates that the holding in *Martin* is applicable here. Shekerko's attempt to withdraw his plea under the guise of an ineffectiveness claim at this late stage is not justified under these circumstances. There is nothing on the record which would indicate that Shekerko did not understand the nature and effect of his guilty plea; the fact that he was not informed of the maximum sentence during the colloquy, but rather just prior to sentencing, is not sufficient to invalidate the plea. *Martin,* 258 Pa.Super. at 415, 392 A.2d at 862. We conclude, therefore, that Shekerko's plea was knowingly and voluntarily entered and that counsel was not ineffective. *Johnson, supra.*

Order affirmed.